UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                              Chapter 11

United Marion LLC,                                         Case No. 11-11108 (SMB)
United Walton LLC,                                         Case No. 11-11109 (SMB)

                                    Debtors.                     Jointly Administered
-----------------------------------------------------------x

## MOTION TO COMPEL AN ACCOUNTING OF CASH COLLATERAL AND REIMBURSEMENT OF IMPROPER PAYMENTS

Walton Associates LLC ("Walton") as successor in interest to Sovereign Bank ("Sovereign"), and Bravo Realty Corp. ("Bravo") (collectively the "Movants"), as and for their joint motion to compel Bijan Danialian ("Danialian"), as the principal of United Marion LLC and United Walton LLC (collectively the "Debtors"), (i) to account for the Debtors' use of cash collateral during the period from April 28, 2011 through July 23, 2012; and (ii) to reimburse Movants for the improper use cash collateral, respectfully allege as follows:

### BACKGROUND FACTS

1. These bankruptcy cases were commenced by the filing of voluntary Chapter 11 petitions on March 14, 2011 and thereafter the Debtors remained in possession of their assets as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

2. The Debtors' principal assets consist of two residential apartment buildings at 2461-2463 Marion Avenue, Bronx, New York (approximately 26 units) and

2435-2447 Walton Avenue, Bronx, New York (approximately 65 units) (together, these two buildings are the "Properties").

3. The Properties are income producing and generated rents of approximately $75,000 per month. Throughout the Chapter 11 cases, Danialian managed and operated the Properties and was responsible for the collection of rents and payments of expenses. This was initially done pursuant to interim and final cash collateral orders executed by the Debtors and its two lenders Sovereign Bank ("Sovereign") and Bravo. Copies of the interim and final cash collateral orders are annexed hereto as Exhibits "A" and "B", respectively.

4. The underlying debt structure relating to the Properties involved a first mortgage and mezzanine loan. Specifically, the Properties were subject to a first mortgage lien initially held by Sovereign, and subsequently assigned to Walton Associates on November 4, 2011. As of May 30, 2012, Walton held an allowed claim of at least $5,446,132 plus additional interest pending the closing on the properties.

5. The Bravo claim has its genesis in a 2008 mezzanine loan agreement in the principal amount of $1 million. As security, Bravo received a pledge of 100% of Danialian's membership interests, plus a UCC-1 financing statement covering personal property of the Debtors.

6. After the Chapter 11 cases were commenced, Sovereign and Bravo negotiated agreements with the Debtors and Danialian, pursuant to which, *inter alia*, the Debtors were afforded a period of ten (10) months to refinance existing debt, failing of which the Properties would be sold under an auction process to be conducted by

Sovereign. (See, ECF No. 28 in the Debtors cases and ECF Nos. 12 and 15 in Danialian's individual Chapter 11 case (11-11115-smb))

7. The Debtors did not refinance the Properties and then became completely uncooperative during the balance of the Chapter 11 cases. Critical to this motion, the Debtors and Danialian neglected their obligation to file operating reports or account for use of cash collateral. As a result, Movants proceeded with their own Creditors Plan of Reorganization (ECF No. 58) providing for a 100% distribution to all general creditors, which was confirmed by amended order dated July 18, 2012 (ECF No. 81) (the "Plan"). The Plan provided for sale of the Properties to Marshall Rose for the sum of $6,200,000.

8. The sale closed on July 23, 2012. The undersigned as disbursing agent made distributions to Walton and its investors, Bravo, the City of New York and all other creditors as per the schedule annexed hereto as Exhibit "C". Walton agreed to take an amount less than its pay-off to help defray the loss to Bravo, which received a discounted pay-off at closing without any accrued interest. To recoup these deficiencies, the Plan reserved the right to pursue an accounting of cash collateral from Danialian.

9. Specifically, Section 4.8 of the Plan provides that:

**Preservation of Rights of Action.** Except as otherwise provided in the Plan, any causes of action shall be retained by the Debtors' estates to be pursued by the Disbursing Agent [Goldberg Weprin Finkel Goldstein LLP] in its discretion for the benefit of Bravo as the only creditor not being paid in full. In particular, Bravo reserves all rights to demand an accounting from the Debtors and Danialian for the use of cash collateral by the Debtors, and to seek reimbursement of all improper disbursements made by the Debtors or Danialian in violation of the cash collateral stipulation.

3

## **RELIEF REQUESTED**

10. In furtherance of the Plan, Movants hereby seeks a full accounting of the receipt and expenditure of all rents and other cash collateral which appears to have been badly misappropriated by Danialian. Indeed, Danialian should have collected close to one ($1,000,000) million dollars in rents during the 14 months while the Debtors operated in Chapter 11. During most of this time, however, the Debtors failed to provide any meaningful operating information as to the disposition of funds.

11. In the interim, Movants inherited more than $180,000 in unpaid post-petition tax and related claims that were paid from the net proceeds of sale under the Plan, and should have been paid by the Debtors from cash collateral.

12. In short, the conduct of Danialian relating to the handling of cash collateral violates all notions of transparency in bankruptcy and effectively makes a mockery of the Debtors obligation under the cash collateral stipulations.

13. As noted above, the Final Order Authorizing Use of Cash Collateral on April 28, 2011 contained the following provisions relevant to the instant motion:

- Sovereign consented to the use of its cash collateral in accordance with a fixed monthly operating budget (the "Budget");

- Debtors agreed to provide weekly reports, including rolling thirteen week cash flow forecast; actual cash receipts and disbursements for prior week; details on all rent arrears and landlord-tenant proceedings to collect same;

- Debtors agreed to monthly adequate protection payments of $41,320.83 to Sovereign, including $20,000 for real estate taxes, water bills and insurance; and

- This Court retained jurisdiction to enforce the order according to its terms.

14.  In point of fact, the Debtors continued to collect rent at the Properties until the closing on the sale in July, 2012. To make matter worse, the Debtors failed to cooperate in connection with the closing. Mr. Danialian refused to execute the deeds and he never delivered leases, rent histories or security deposits to the buyer, despite provisions under the Plan providing for the Debtors' cooperation.

15.  In short, the time for the Debtors and Danialian to escape scrutiny must come to an end. Accordingly, Movants hereby seek to compel Danialian to make a complete and thorough accounting for all rents collected and all monies disbursed between the entry of the Final Cash Collateral Order on April 28, 2011 and the closing on sale of the Properties on July 23, 2012. Most importantly, all funds improperly used or misappropriated by Danialian must be reimbursed to the Movants.

16.  Section 363(a) specifically includes rents in the definition of "cash collateral". Section 363(c)(2) specifically bars the use of cash collateral unless each entity with an interest in the cash collateral consents, or the court authorizes such use "in accordance with the provisions of this section." Section 363(e) permits the court to condition the use of cash collateral "as is necessary to provide adequate protection" to parties with an interest in the cash collateral.

17. In these cases, the Debtors' and Danialian's use of the cash collateral was conditioned on, among other things, making disbursements pursuant to the agreed Budget, and providing a proper accounting of receipts and disbursements.

18. There is no question that the Debtors failed to comply with the accounting provisions of the Final Cash Collateral Order and also defaulted in their obligations to make monthly adequate protection payments to Walton, its predecessor (Sovereign) and Bravo.

19. Such cash collateral manifestly constituted property of the estate, and must be turned over to the secured creditors for administration under the Plan. Indeed, the Debtors and Danialian have a statutory obligation under Section 704(a)(2), as made applicable by Section 1107(a), as well as Section 542, to be accountable for all property received. Thus, courts have not only directed turnover of cash collateral impermissibly retained by a debtor, but have held the debtor in contempt for failure to comply with the cash collateral and turn over orders. *See, e.g.*, In re Krisle, 54 B.R. 330, 337-338 (Bankr. D.S.D. 1985)

20. The limitations on disbursements through the Budget, and the requirements for reporting and adequate protection contained in the Final Cash Collateral Order were well within the power of Court to direct pursuant to the provisions of Section 363 as cited above. Moreover, considering that the Final Cash Collateral Order was entered with the express consent of the Debtors, this Court can and should exercise its powers under Sections 105 and 363 of the Bankruptcy Code to enforce its lawful Final Cash Collateral Order and direct full compliance by Danialian. *See*, Travelers Indemnity

Co. v. Bailey, 557 U.S. 137, 138, 129 S.Ct. 2195, 2198 (2009)("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders").

21. In view of the foregoing, Movants request that the Debtors and Danialian: (i) to provide the accounting previously Ordered by this Court; (ii) to pay over to Movants any residual funds collected by the Debtors that remain in their possession, custody or control; and (iii) to return to the Movants all cash collateral that was improperly retained or disbursed in violation of the approved Budget and the Final Cash Collateral Order.

WHEREFORE, Movants respectfully pray for the entry of an Order consistent with the foregoing, and granting such other and further relief as may be just and proper.

DATED: New York, New York
October 15, 2012

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Attorneys for Bravo Realty Corp.
1501 Broadway, 21st Floor
New York, New York 10036
(212) 221-5700

By: _____
Kevin J. Nash, Esq.

X:\GWFG\new data\Georgiana\word\Nehmadi - Bravo Realty (United Walton & United Marion) - NEHMA.29871\Motion to Compel Compliance with Cash Collateral Stipulation 10-12-12 (v2).doc

7